Revised February 7, 2003

**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

No. 02-20098

BRYAN FLOCK, Individually and as next friend, Natural Father, and as Heir of Son, Brandon Flock (Deceased); OMY RAY MUNSINGER, Individually, and as Natural Father, and as an Heir of Shonda Munsinger (Deceased); PATRICIA MUNSINGER HARRIS, Individually, and as Natural Mother, and as an heir of Shonda Munsinger (Deceased); MICKEY BRITT,

Plaintiffs-Appellants,

VERSUS

SCRIPTO-TOKAI CORPORATION; TOKAI CORPORATION; JMP MEXICO SA DE CV, also known as JMP Mexico SAdeCV; TOKAI DE MEXICO SA DE CV,

Defendants-Appellees.

Appeal from the United States District Court
for the Southern District of Texas

February 3, 2003

Before DAVIS, BARKSDALE and DENNIS, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge.

Plaintiffs, Bryan Flock, Omy Ray Munsinger, Patricia Harris Munsinger, and Mickey Britt,

1

appeal the district court's judgment granting summary judgment to defendants, Scripto-Tokai Corporation ("Scripto") and Tokai Corporation ("Tokai") (collectively "Scripto-Tokai"). The

district court concluded that the plaintiffs could not establish that a defect in an Aim 'n Flame utility lighter designed, manufactured, and distributed by Scripto-Tokai caused the fire that destroyed a trailer and resulted in the deaths of Shonda Munsinger ("Shonda") and Brandon Flock ("Brandon"). We disagree and conclude that plaintiffs presented sufficient summary judgment evidence to create a genuine issue of material fact on whether the Aim 'n Flame caused the fire that resulted in Shonda's and Brandon's deaths. We therefore vacate the district court's judgment in part and remand for further proceedings.

## I.

In October 1999, Shonda and her four year-old son, Brandon, died of asphyxia after the trailer they shared with Kenneth Keith Mann, Shonda's boyfriend, in Conroe, Texas, caught fire. That morning, Mann left for work at 7:30 a.m. Shonda was still sleeping in the master bedroom on the north end of the trailer, but as he left, Mann heard Brandon awake and playing in his room located on the south end of the trailer. At approximately 9:00 a.m., neighbors noticed fire blazing out of the windows at the south end of the trailer and called for help. Firefighters arrived shortly thereafter. After bringing the blaze under control, the firefighters found Shonda and Brandon dead in the master bedroom, which remained untouched by the fire.

Montgomery County fire investigators determined that the fire started in Brandon's bedroom. The investigators found the metal tip of an Aim 'n Flame utility lighter in the room. The plastic arm of the Aim 'n Flame was melted in the fire making it impossible to determine when it was

manufactured.  The Aim 'n  Flame  was the only incendiary device in this room, though matches and cigarette lighters were found elsewhere in the trailer.  Considering the point of origin of the fire and the proximity of the Aim 'n  Flame thereto, the investigators concluded that Brandon started the fire by playing with the lighter in his bedroom.

Brandon's father, Bryan Flock, Shonda's parents, Omy Munsinger and Patricia Harris, and Mickey Britt, the owner of the trailer,  filed suit against Scripto-Tokai in federal court on the basis of diversity jurisdiction.  They sought compensatory and exemplary damages on the basis of products liability, negligence, breach of express and implied warranties, misrepresentation, and violations of the Texas Deceptive Trade Practices Act, Tex. Bus. & Com. Code § 17.46 et seq.  In response to their complaint, the defendants filed a third-party complaint against Mann alleging he had a duty to install and maintain smoke detectors in the trailer.

Scripto-Tokai moved for summary judgment seeking dismissal of all of the plaintiffs' claims. The magistrate judge, to whom the case was referred for pre-trial management, recommended that summary judgment be granted for some of the plaintiffs' claims but denied as to others.  The district court adopted this recommendation to the extent that the magistrate recommended dismissing the plaintiffs' claims but issued its own opinion granting summary judgment for the remaining claims. The district court concluded that "assuming there was a defect in the lighter they [plaintiffs] cannot establish that the particular defect  was connected to the fire."  The plaintiffs have lodged a timely appeal.

II.

We review the district court's ruling on the defendants' Motion for Summary Judgment *de novo*, applying the same legal standard as the district court.  Ramirez v. City of San Antonio, 312

3

F.3d 178, 181 (5th Cir. 2002).  A summary judgment is only appropriate when, viewing the evidence in the light most favorable to the nonmoving party, no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law.  Canova v. Shell Pipeline Co., 290 F.3d 753, 755 (5th Cir. 2002).  In determining whether there is a dispute as to any material fact, we consider all of the evidence in the record, but we do not make credibility determinations or weigh evidence. Ramirez v. City of San Antonio, 312 F.3d at 181.  Instead, we draw all reasonable inferences in favor of the nonmoving party.  Id.

Plaintiffs' primary claim is that Scripto-Tokai are liable under the theory of products liability based on the defective design of the defendants' Aim 'n Flame utility lighter.  In Texas, Texas Civil Practice & Remedy Code § 82.005 and Section 402A of the Restatement (Second) of Torts  govern products liability claims for design defects.[1]  Uniroyal Goodrich Tire Co. v. Martinez, 997 S.W.2d

[1]  Section 82.005 of the  Texas Civil Practice & Remedy Code reads:

(a) In a products liability action in which a claimant alleges a design defect, the burden is on the claimant to prove by a preponderance of the evidence that:

(1) there was a safer alternative design; and

(2) the defect was a producing cause of the personal injury, property damage, or death for which the claimant seeks recovery.

(b) In this section, "safer alternative design" means a product design other than the one actually used that in reasonable probability:

(1) would have prevented or significantly reduced the risk of the claimant's personal injury, property damage, or death without substantially impairing the product's utility; and

(2) was economically and technologically feasible at the time the product left the control of the manufacturer or seller by the application of existing or reasonably achievable scientific knowledge.

4

328, 334 (Tex. 1998); <u>American Tobacco Company, Inc. v. Grinnell</u>, 951 S.W.2d 420, 426 (Tex. 1997). Under this schema, the plaintiff must show that: (1) because of its defective design the product is unreasonably dangerous, (2) a safer alternative design exists, and (3) the defective design was the producing cause of the plaintiffs' injuries.

III.

Because the focus of the district court's ruling was the lack of a causal link between the defendants' lighter and the fire, we begin with a consideration of this issue.

Under Texas law, causation generally is a question of fact for the jury. <u>Gutierrez v. Excel Corp.</u>, 106 F.3d 683, 687 (5th Cir. 1997). "Proof of causation requires more than conjecture or guess." <u>Mosley v. Excel Corp.</u>, 109 F.3d 1006, 1009 (5th Cir. 1997). However, it need not be supported by direct evidence. <u>Tompkins v. Cyr</u>, 202 F.3d 770, 782 (5th Cir. 2000). Circumstantial evidence and reasonable inferences therefrom may form a sufficient basis for a finding of causation. <u>Id</u>. Establishing causation requires facts sufficient for a jury to reasonably infer that the defendants' acts were a substantial factor in bringing about the injury. <u>Id</u>. Nevertheless, when circumstances are consistent with either of two factual scenarios and one is no more probable than the other, neither can be inferred. <u>Summers v. Fort Crockett Hotel</u>, 902 S.W.2d 20, 25 (Tex. App. Houston 1st Dist. 1995)

---

Section 402A of the Restatement (Second) of Torts reads:

(1) one who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

    (a) the seller is engaged in the business of selling such a product, and

    (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

5

(citing <u>Litton Industrial Products Inc. v. Gammage</u>, 668 S.W.2d 319, 324 (Tex. 1984); <u>Marshall Field Stores, Inc. v. Gardiner</u>, 859 S.W.2d 391, 400 (Tex. App. Houston 1st Dist. 1993)).

In their Motion for Summary Judgment, Scripto-Tokai argued that, because cigarette lighters and matches were found in other areas of the trailer, it was just as likely that the fire could have been started with these incendiary devices rather than the Aim 'n Flame. However, Scripto-Tokai overlook the inference that can be drawn from the fact that the Aim 'n Flame was the only incendiary device that was found in Brandon's room, where the fire started. The Official Fire Report of the Montgomery County Fire Marshall's Office and its supplements (the "Fire Report") strongly support plaintiffs' contention that the fire was started by Brandon using an Aim 'n Flame.

The Fire Report contains the findings of Investigator Darren Hess. Investigator Hess found no evidence that a wire, gas line, or weather was the source of the fire. Hess determined that the fire began in the south bedroom, Brandon's bedroom, near the bunk bed. Investigator Hess noted in the report that remains of a "BBQ/fireplace propane lighter" were recovered from the area of origin. Investigator Williams, who investigated the scene of the fire with Hess, likewise noted that the remains of a "disposable lighter, of the type normally used to light fireplaces and BBQ pits (red plastic handle and squared off metal tip)" were found in the room.[2] Without being informed that the metal tip of an Aim 'n Flame was found in Brandon's bedroom, Mann informed Investigator Williams that he and Shonda had an Aim 'n Flame in the trailer which they kept in the master bedroom on top of the TV. Mann led Investigator Williams to the location where he believed the lighter was left the morning of the fire, but it was no longer there.

Scripto-Tokai surmise other possible scenarios which could have caused the fire, e.g. Brandon

---

[2] The plastic component of the lighter was not found in the debris.

6

took a lighter from a drawer in the master bedroom, started the fire, and then returned the lighter to the drawer, or Brandon started the fire with matches which were destroyed in the fire. They contend that these hypothetical scenarios were "as likely" as that contained in the fire report. We do not agree. The only evidence of an ignition source found in Brandon's bedroom, where the fire originated, was the remains of the Aim 'n Flame lighter. This fact, together with other surrounding circumstances, creates a genuine issue of material fact on whether Brandon started the fire using the lighter. Thus, issues of fact preclude an award of summary judgment on this basis.

## IV.

Scripto-Tokai argue next that, even if an Aim 'n Flame was used to start the blaze, the summary judgment evidence fails to establish that a design defect was the producing cause of the fire. In Texas, producing cause is a statutorily required element for recovery in a products liability case. Tex. Civ. Prac. & Rem. Code § 82.005 (a) (2). "A producing cause is 'an efficient, exciting, or contributing cause, which in a natural sequence, produced injuries or damages complained of, if any.'" G.M.C. v. Harper, 61 S.W.3d 118, 130 (Tex. App. Eastland 2001) (citing Union Pump Company v. Allbritton, 898 S.W.2d 773, 775 (Tex. 1995) and Rourke v. Garza, 530 S.W.2d 794, 801 (Tex. 1975)). Producing cause is the cause-in-fact of the harm, meaning that a "defendant's conduct must have been a substantial factor in bringing about the injury and that the injury would not have occurred but for the defendant's conduct." Id. at 131.

The crux of Scripto-Tokai's argument is that there is no way to determine whether a manufacturing defect caused the fire because there is no way to determine when the Aim 'n Flame found in Brandon's room was manufactured because the plastic component was destroyed in the fire.

7

The plaintiffs have urged two potential design defect theories for which the time of manufacture plays a key role.[3] First, the plaintiffs contend that a problem with the safety on/off switch on the Aim 'n Flame may have caused the fire. The switch is designed so that the lighter will not ignite if the trigger is pulled when the switch is in the "off" position. Both the pre-1996 model and a 1996 redesigned model of the Aim 'n Flame have the on/off safety switch. The plaintiffs produced evidence showing that the on/off switch of the pre-1996 model gradually migrates to the "on" position after the trigger is pulled a number of times in repetition. This migration problem, however, was apparently corrected in the 1996 redesign. Thus, plaintiffs cannot rely on the migration problem as the design defect, unless they can produce evidence from which a jury could find that the lighter found in Brandon's bedroom was manufactured before 1996.

The plaintiffs produced evidence that Shonda and her former husband, Bryan Flock, purchased two or three Aim 'n Flame lighters just after Brandon was born in 1995. However, Shonda and Bryan separated in 1997, two years before the fire. He has no knowledge of what happened to these lighters after that time. While the plaintiffs contend that Brandon used one of the lighters purchased in 1995, Shonda may have bought others after she and Bryan separated. We agree with Scripto-Tokai that it is impossible to determine from the summary judgment evidence whether the Aim 'n Flame used to start the fire was a pre-1996 model or the 1996 redesign. Further, even if the Aim 'n Flame had a migration defect, there is no way to determine whether the switch migrated to the "on" position, whether it was left "on" by the last adult to use it, or whether Brandon turned

_____

[3] The plaintiffs also contend that the lighter is defective because it releases butane each time the trigger is pulled; however, they have presented no evidence establishing a causal link between this purported defect and the fire. Thus, the plaintiffs have failed to create a genuine issue of material fact regarding this theory.

the switch to the "on" position himself. Thus, to the extent that the plaintiffs urge that the fire was caused by the migration of the on/off switch, summary judgment is appropriate.

However, independent of their migration theory, the plaintiffs also contend that the lack of child resistant features constitutes a design defect. Prior to 1999, Scripto-Tokai did not offer a child resistant model of the Aim 'n Flame.[4] In late-1999, Scripto-Tokai redesigned the Aim 'n Flame to incorporate child resistant features which require the use of the thumb to move a locking member at the same time the index finger is used to pull the trigger. According to expert testimony, a four year-old child does not have the motor or cognitive capacity to master the specific, sequential motor tasks required to ignite the child resistant model and would abandon the Aim 'n Flame after several minutes, thus, preventing child play fires.

In his deposition, Mann stated that the only utility lighters in the trailer at the time of the fire were purchased by Shonda before she moved into the trailer in March 1999. Though the date of manufacture of the Aim 'n Flames in the trailer cannot be pinpointed, from this evidence a jury could find that the Aim 'n Flame which caused the fire was manufactured prior to the introduction of a child resistant model. A jury could find it unlikely that Brandon, as a four year-old child, would have been able to ignite the Aim 'n Flame had it been equipped with the child resistant features. Thus, the plaintiffs produced evidence from which a jury could find that the lack of an adequate child resistant mechanism was a substantial factor in starting the fire.

Plaintiffs have produced substantial evidence from which a jury could find that the lighter without the child resistant features was defectively designed and was a substantial factor in starting

_____

[4] Scripto-Tokai does not contend the safety on/off switch was intended to afford any level of child resistance.

9

the fire. Because issues of fact are presented, summary judgment is inappropriate on this issue.

V.

Scripto-Tokai also contend that they are entitled to judgment as a matter of law because the plaintiffs have no evidence that there was a safer alternative design. Hernandez v. Tokai Corp., 2 S.W.3d 251 (Tex. 1999); Tex. Civ. Prac. & Rem. Code § 82.005 (a) (1).

A safer alternative design is both a statutorily required element of a design defect claim and a factor considered when conducting a risk-utility analysis to determine whether a product is unreasonably dangerous. Tex. Civ. Prac. & Rem. Code Section 82.005 (b); Hernandez v. Tokai Corp., 2 S.W.3d 251, 256. Under Texas Civil Practice & Remedy Code Section 82.005 (b), a "safer alternative design" is one that in reasonable probability: (1) would have prevented or significantly reduced the risk of the claimant's personal injury, property damage, or death without substantially impairing the product's utility; and (2) was economically and technologically feasible at the time the product left the control of the manufacturer or seller by the application of existing or reasonably achievable scientific knowledge. The summary judgment record is replete with evidence that a "safer alternative design" as defined by Section 82.005 (b) existed by October 1995, the earliest purchase date of the Aim 'n Flame that caused the fire.

As noted in Section IV above, the plaintiffs produced substantial evidence that an adequate child resistant mechanism would have prevented the fire. The plaintiffs' industrial engineering expert, Professor Tarald Kvalseth, stated in his affidavit that existing child resistant technology would have made the Aim 'n Flame nearly impossible for a child to ignite yet, at the same time, would not have substantially reduced the utility of the lighter for adult use. The plaintiffs also produced the affidavit of Dr. Bruce Perry, a board certified child psychiatrist, who averred that it would have been

10

"extremely difficult if not impossible" for a four year-old child, like Brandon, to activate a child resistant Aim 'n Flame. Because a child of this age lacks the required motor skills and cognitive abilities to activate the child resistant mechanism, the child grows bored and abandons the Aim 'n Flame after his efforts to ignite it are frustrated by the child resistant features. In contrast, only a brief exploration or manipulation by a child results in the production of a flame when the Aim 'n Flame lacks child resistant features. Based on this evidence, a jury could find that, had the Aim 'n Flame possessed the child resistant mechanism, the risk of Brandon starting a fire with it would have been prevented or significantly reduced.

Regarding the availability of this technology, Professor Kvalseth stated that the technology was within the state of the art in 1985 when Scripto-Tokai first introduced the Aim 'n Flame in the United States. Moreover, the history of the development of the 1999 child resistant model of the Aim 'n Flame demonstrates that the technology was available at the time the product left the control of Scripto-Tokai.

The child resistant model of the Aim 'n Flame introduced by Scripto-Tokai in 1999 was covered by a 1994 patent owned by Tokai. In early 1994, Scripto directed Tokai's research and development staff to quickly develop plans to make the Aim 'n Flame child resistant due to concerns regarding child play fires. Three formal mock ups of a child resistant Aim 'n Flame were presented to Scripto's management by Tokai's research and development staff in June 1994. As a result, Tokai filed four patents of child resistant devices for use in its utility lighters in October 1994, noting in the patents that the current designs were not desirable from the perspective of safety. According to Scripto's former president, it would have taken only seven to nine months to manufacture and distribute this child resistant version of the Aim 'n Flame. Thus, it is clear that the child resistant

11

technology was available by October 1995, the earliest purchase date of the Aim 'n Flame involved in this fire.

Further, the plaintiffs produced evidence that producing a child resistant model was economically feasible. According to Kvalseth, if child resistant features had been incorporated in the original design in 1984, the cost would have been negligible. It is only when a product is modified that a manufacturer incurs additional expense. In internal memoranda authored in 1996, Scripto-Tokai estimated the cost to be 3.0 yen or approximately 3¢ per unit for the modification and mass production of a child resistant Aim 'n Flame. The cost of modification of the child resistant model ultimately introduced in 1999 proved to be less than 5¢ per unit, with a total out of pocket cost to the company of $500,000. Hence, it was also arguably economically feasible to produce a child resistant Aim 'n Flame at the time of its purchase.

In light of the above, it is clear that the plaintiffs met their burden of production on summary judgment and that questions of fact remain with regard to whether a "safer alternative design" existed at the time the Aim 'n Flame left the control of Scripto-Tokai. These questions of fact preclude summary judgment on this issue.

VI.

Scripto-Tokai next argue that, because the Aim 'n Flame was designed solely for adult use and because the danger associated with the product was apparent to the ordinary consumer, the product is not unreasonably dangerous under a risk-utility analysis and that judgment should be rendered in its favor as a matter of law.

While the elements of Section 82.005 of the Texas Civil Practice & Remedy Code must be proved to establish liability for a defectively designed product, fulfilling the statute's requirements is

12

not sufficient to establish liability.  Hernandez v. Tokai Corp., 2 S.W.3d 251, 256.  To prevail in a design defect claim in Texas, plaintiff must also prove that a product is unreasonably dangerous.  Id.  Whether a defendant has breached its duty to design a safe product is generally a question of fact for a jury.  American Tobacco Company, Inc. v. Grinnell, 951 S.W.2d 420, 432 (1997).  "In determining whether a product is defectively designed, the jury must conclude that the product is unreasonably dangerous as designed, taking into consideration the utility of the product and the risk involved in its use."  Id.  A risk-utility analysis involves the consideration of several factors, including:

> (1) the utility of the product to the user and to the public as a whole weighed against the gravity and likelihood of injury from its use; (2) the availability of a substitute product which would meet the same need and not be unsafe or unreasonably expensive; (3) the manufacturer's ability to eliminate the unsafe character of the product without seriously impairing its usefulness or significantly increasing its costs; (4) the user's anticipated awareness of the dangers inherent in the product and their avoidability because of the general public knowledge of the obvious condition of the product, or of the existence of suitable warnings or instructions, and (5) the expectations of the ordinary consumer.[5]  Hernandez v. Tokai Corp., 2 S.W.3d at 256 (citing American Tobacco Co. v. Grinnell, 951 S.W.2d 420, 432).

Here, Scripto-Tokai argue that the plaintiffs have failed to produce evidence that the Aim 'n Flame is unreasonably dangerous because they have failed to identify a  risk associated with adult use of the Aim 'n Flame.  Scripto-Tokai contend that, under Hernandez v. Tokai Corp., the risks weighed in a risk-utility analysis must be risks associated with use of the Aim 'n Flame by an intended adult user.

The Texas Supreme Court decided Hernandez in response to a certified question from this court regarding whether a design defect products liability claim could be maintained in a case

---

[5]  The second and third of these factors have been codified by the Texas Legislature in the "safer alternative design" requirement of Tex. Civ. Prac. & Rem. Code § 82.005.  American Tobacco Company v. Grinnell, 951 S.W.2d 420, 433.  A thorough analysis of whether a safer alternative design was available can be found in Section V above.

13

involving a fire started by a child using a cigarette lighter without child resistant features. Id. at 254. The court recognized that a risk associated with adult use is that "a lighter will come into a child's hands." Id. at 259. The relevant inquiry includes assessing the risk that an adult will allow a child access and the gravity of the harm resulting therefrom. Id. Thus, the risk of child play is subsumed in the risks of adult use and is clearly relevant to a risk-utility analysis. This risk is then balanced against the consumer preference for utility lighters without child resistant features to determine "whether the adult users of lighters should be deprived of this choice because of the risk that some child will obtain lighters that are not child resistant and cause harm." Id. at 260.

Through Consumer Products Safety Commissions notices, their own experts' reports, and documents obtained from Scripto-Tokai, plaintiffs have produced volumes of evidence showing that the risk of child access to the Aim 'n Flame and the resulting harm are both significant. The risk that a child will gain access to an Aim 'n Flame is higher than that associated with a cigarette lighter because children find the toy gun-like appearance of the Aim 'n Flame particularly attractive. Out of natural curiosity a child would seek out the Aim 'n Flame, pull the trigger, and activate the mechanism. The number of child play fires between 1990 and 1994 prompted Scripto-Tokai to begin developing child resistant models, though one was not actually marketed until 1999. In addition to the obvious harm that a child, like Brandon, may injure himself or others, plaintiffs produced evidence quantifying the societal cost of child play fires at $192 million between 1995 and 1998. In view of this evidence, the risk and harm identified by the plaintiffs create a material issue of fact on the aspect of liability. These factors should be weighed by the finder of fact against the consumer's preference for non-child resistant utility lighters.

The intended user's awareness of the risk is also an important consideration in determining

14

whether a product is unreasonably dangerous. Id. Scripto-Tokai urge that the risk of child play is so apparent to the intended user that this fact alone is dispositive of the case. We agree with Scripto-Tokai that the dangers associated with the Aim 'n Flame may well be readily apparent to the reasonable user. However, this singular fact does not tilt the balance of the risk-utility analysis so far in the defendants' favor as to warrant resolution as a matter of law.

The Supreme Court of Texas has consistently held that liability for a design defect may attach even if the defect is apparent. Uniroyal Goodrich Tire Company v. Martinez, 977 S.W.2d 328, 336; American Tobacco Company, Inc. v. Grinnell, 951 S.W.2d 420, 432; Caterpillar, Inc. v. Shears, 911 S.W.2d 379, 383 (1995); Turner v. General Motors Corp., 584 S.W.2d 844, 850 (Tex. 1979). "[T]he fact that a danger is open and obvious . . . does not preclude a finding of product defect when a safer, reasonable alternative design exists." Uniroyal Goodrich Tire Company v. Martinez, 977 S.W.2d 328, 336. While the obvious risk of allowing Brandon access to the lighter weighs against liability, it is merely one factor which must be weighed by the jury in determining whether the Aim 'n Flame is unreasonably dangerous in design. This factor standing alone does not dictate that judgment be granted as a matter of law.

For the reasons discussed above, issues of fact preclude summary judgment on plaintiffs' products liability claims based on defective design.

VII.

Scripto-Tokai next argue that plaintiffs cannot show that they are entitled to recover under the Texas Deceptive Trade Practices Act ("DTPA"). Tex. Bus. & Com. Code § 17.46 et seq. From our review of the summary judgment record, we agree with the district court that plaintiffs produced no evidence that Scripto-Tokai made misrepresentations or omitted important facts regarding the Aim

15

'n Flame. Thus, for essentially the same reasons stated by the district court, Scripto-Tokai is entitled to summary judgment on plaintiffs' DTPA claims.

## VIII.

Because of the district court's disposition of the plaintiffs' suit, the district court found it unnecessary to address several of the defendants' bases for summary judgment directed to various other predicates for liability and damages asserted by the plaintiffs.[6] We remand this case to the district court so that it can consider these arguments in the first instance.

For the reasons stated above, we AFFIRM the district court's order granting summary judgment to Scripto-Tokai on plaintiffs' DTPA claims. We VACATE the district court's order granting summary judgment on plaintiffs' design defect claims and REMAND this case to the district court for further proceedings consistent with this opinion.

---

[6] In addition to those claims treated herein, defendants also moved for summary judgment on plaintiffs' claims under the theories of products liability based on a marketing defect, negligence, breach of express and implied warranty, and on plaintiffs' right to recovery exemplary damages.