United States Court of Appeals
Fifth Circuit

**F I L E D**

June 25, 2004

Charles R. Fulbruge III
Clerk

**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

———————————

No. 03-41135

———————————

KRISTI MARTORELL,

Plaintiff-Appellant,

versus

GALVESTON COUNTY, TEXAS,

Defendant-Appellee.

———————————

Appeal from the United States District Court
for the Southern District of Texas
G-02-CV-515

———————————

Before BARKSDALE, EMILIO M. GARZA, and STEWART, Circuit Judges.

PER CURIAM:[*]

Kristi Martorell brought this Title VII suit against her former employer, Galveston County, claiming that she had been constructively discharged from her employment with the County in retaliation for sexual harassment complaints she made against her supervisor, Sergeant P.J. Alvarado. The district court granted Galveston County's motion for summary judgment and dismissed

---

[*]Pursuant to 5ᵀᴴ Cɪʀ. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5ᵀᴴ Cɪʀ. R. 47.5.4.

1

Martorell's claims with prejudice. For the following reasons, we AFFIRM

## FACTUAL AND PROCEDURAL HISTORY

From May, 1997, until she resigned in December, 2000, Martorell was employed as a Correctional Officer at the Galveston County Jail. In May of 1999, Alvarado began verbally harassing Martorell -- for example, he made inappropriate comments about her anatomy and asked her when he could come to her house for breakfast. Martorell did not report Alvarado's conduct until December, 1999, when his advances became physical. At that time, she filed an Internal Affairs complaint alleging that Alvarado subjected her to verbal and physical sexual harassment, and unannounced and unwelcome visits to her home.

On December 27, 1999, Martorell met with Major Freddi Poor and Sergeant Mike Barry to discuss Alvarado's behavior towards her. Immediately following this meeting, Martorell was transferred at her request from the afternoon shift (2pm to 10 pm) to the morning shift (6am to 2pm) to avoid contact with Alvarado. The County investigated the allegations, sustained Martorell's complaint after Alvarado admitted wrongdoing, and reprimanded Alvarado by demoting him from Sergeant to Deputy and cutting his pay accordingly.

Although Alvarado never sexually harassed Martorell again, Martorell claimed that other colleagues retaliated against her for having brought a complaint about Alvarado. Specifically, Martorell alleged that certain co-workers ceased being friends with her and that deputies made statements to her that she would have them "in administration" (i.e., she would get them in trouble), that everyone was glad she left the afternoon shift, that everybody hated her, and that she was a troublemaker.

In early 2000, Martorell became pregnant and developed gestational diabetes mid-way

2

through her pregnancy. She was assigned to work solo in direct contact with inmates in a women's dorm. In that capacity, she was punched in the stomach while seven months pregnant by an inmate. Fearing that the dorm assignment posed a threat to her safety and that of her unborn child, Martorell twice formally asked to be reassigned to a position that was less stressful and physically demanding. She first went to Lieutenant Gregory to request reassignment, but Gregory refused, informing her that she "should have thought about that before [she] got pregnant." Major Poor, too, refused to reassign her, claiming that he had no other positions available for her.

On September 22, 2000, six weeks prior to the birth of her child, Martorell stopped working because her doctor placed her on bed rest to alleviate pregnancy complications. Martorell did not return to work at the correctional facility, but instead tendered her resignation on December 4, 2000, when her family medical leave ended.

After she resigned, Martorell secured a part-time position at a local police department. She was told that she would get a full-time post if she obtained a state law enforcement license. Before Martorell submitted her application for the position, however, the police chief conducted a background check and informed her that her Galveston County personnel file described her as "slow and stupid," a "slut," and a "troublemaker."

Based on these events, Martorell argued to the district court that she was sexually harassed and retaliated against in violation of Title VII. The district court disagreed and granted summary judgment in favor of the County, ruling that Martorell's sexual harassment and retaliation claims failed as a matter of law. Martorell now appeals the district court's ruling on her retaliation claim.

3

DISCUSSION

I.      Standard of Review

This Court reviews the grant of summary judgment de novo, applying the same legal standards as the district court applied to determine whether summary judgment was appropriate. Flock v. Scripto-Tokai Corp., 319 F.3d 231, 236 (5th Cir. 2003) (citing Ramirez v. City of San Antonio, 312 F.3d 178, 181 (5th Cir. 2002)). A summary judgment motion is properly granted only when, viewing the evidence in the light most favorable to the nonmoving party, the record indicates that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). To determine "whether there is a dispute as to any material fact, we consider all of the evidence in the record, but we do not make credibility determinations or weigh evidence." Flock, 319 F.3d at 236 (citation omitted). Rather, "we draw all reasonable inferences in favor of the nonmoving party." Id.

II.     Analysis

In order to establish a prima facie case for retaliation under Title VII, a plaintiff must demonstrate "(1) that she engaged in an activity protected by Title VII; (2) that an adverse employment action occurred; and (3) that a causal link existed between the protected activity and the adverse employment action." Gee v. Principi, 289 F.3d 342, 345 (5th Cir.2002). A resignation is actionable as an adverse employment action only if the resignation qualifies as a constructive discharge. Faruki v. Parsons, 123 F.3d 315, 319 (5th Cir. 1997).

The district court concluded that Martorell failed to raise an issue of material fact on two essential elements of her Title VII claim: that her resignation qualified as a constructive discharge and was thereby actionable as an adverse employment action and that a causal link existed between the

4

protected activity-- her sexual harassment complaint -- and the alleged adverse employment action. Because we conclude that Martorell failed to meet her summary judgment burden as to causation, we need not address whether the County's failure to reassign her to a "less stressful position" constituted an adverse employment action (i.e., that she was constructively discharged).

We have reviewed the briefs and the entirety of the record with great care. Taking the summary judgment evidence in the light most favorable to Martorell, as we must, we nonetheless find that her own deposition testimony reveals that there is no causal link between her alleged adverse employment action and her complaint against Alvarado. Martorell separately asked Lieutenant Gregory and Major Poor if she could be reassigned. Although she testified that Gregory refused her request, informing her that she should have thought about the stressfulness of her job "before she became pregnant," she denied that his refusal to transfer her was related to any retaliation for having complained about Alvarado. Rather, Martorell testified that he was just being himself, "a jerk," and insensitive to her pregnancy. As for Major Poor, he told Martorell that the posts she requested, for example, as a receptionist, were already occupied by other people. Martorell identified these individuals by name in her deposition and never denied that they did indeed already occupy these posts. Furthermore, Martorell held the same position, involving the same duties and risks, prior to and following her complaint. The only difference in her assignment after she became pregnant was that she apparently spent less time in the cockpit area of the prison, which would have required her to regularly navigate multiple flights of stairs while heavily pregnant, and more time in direct contact with inmates inside the women's dorm, which allowed her to remain seated at her desk for most of her shift. Most significantly, Martorell's own deposition testimony shows that the working conditions she complained of were not the actual reasons for her resignation. Martorell testified that she

5

resigned because the prison "wanted her [to return to work] too soon" after she had her baby. Under the particular summary judgment evidence presented in this case, we hold that no reasonable juror could find a causal link between the County's alleged adverse employment action and Martorell's complaint against Alvarado.

## CONCLUSION

For the foregoing reasons, we AFFIRM the district court's grant of summary judgment in favor of Galveston County and its dismissal of Martorell's Title VII claims with prejudice. AFFIRMED.

6