# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

December 18, 2018

Lyle W. Cayce
Clerk

———————

No. 17-40968

———————

KIMBERLY MEADOR, agent of Individually, And as Guardian for L.M. a minor; AMOS STANDARD, on behalf of Individually, and on behalf of the Estate of Shari Standard, deceased; RUSSELL JONES, on behalf of Individually, and on behalf of the Estate of Sandra Jones, deceased,

>   Plaintiffs - Appellants

v.

APPLE, INCORPORATED,

>   Defendant - Appellee

————————————

Appeal from the United States District Court
for the Eastern District of Texas

————————————

Before STEWART, Chief Judge, and WIENER and HIGGINSON, Circuit Judges.

STEPHEN A. HIGGINSON, Circuit Judge:

This case asks us to decide whether, under Texas law, a driver's neurobiological response to a smartphone notification can be a cause in fact of a car crash. Because answering in the affirmative would entail an impermissible innovation or extension of state law, we answer in the negative. Accordingly, we AFFIRM.

No. 17-40968

I

According to Appellants' amended complaint, Ashley Kubiak was driving her pick-up truck on April 30, 2013 when she received a text message on her iPhone 5. Appellants allege that Kubiak looked down to read the text, after which she turned her attention back to the road. At that point it was too late to avoid colliding with a vehicle carrying two adults and a child. The adults died, while the child survived but was rendered paraplegic. Kubiak was convicted of two counts of criminally negligent homicide.

In 2008, Apple had secured a patent covering "[l]ock-out mechanisms for driver handheld computing devices."[1] The patent included the following language:

> Texting while driving has become a major concern of parents, law enforcement, and the general public. An April 2006 study found that 80 percent of auto accidents are caused by distractions such as applying makeup, eating, and text messaging on handheld computing devices (texting). According to the Liberty Mutual Research Institute for Safety and Students Against Destruct[ive] Decisions, teens report that texting is their number one distraction while driving. Teens understand that texting while driving is dangerous, but this is often not enough motivation to end the practice.

> New laws are being written to make texting illegal while driving. However, law enforcement officials report that their ability to catch offenders is limited because the texting device can be used out of sight (e.g., on the driver's lap), thus making texting while driving even more dangerous. Texting while driving has become so widespread it is doubtful that law enforcement will have any significant effect on stopping the practice.[2]

Apple did not implement any version of a "lock-out mechanism" on the iPhone 5, which Kubiak was using at the time of the accident.

---

[1] U.S. Patent No. 8,706,143.

[2] *Id.*

2

No. 17-40968

Representatives of the victims of Kubiak's accident sued Apple in federal court. They asserted claims under Texas common law for general negligence and strict products liability. They alleged that the accident was caused by Apple's failure to implement the patent on the iPhone 5 and by Apple's failure to warn iPhone 5 users about the risks of distracted driving. In particular, the plaintiffs alleged that receipt of a text message triggers in the recipient "an unconscious and automatic, neurobiological compulsion to engage in texting behavior." They supported this allegation with various studies and reports, including a proposed expert report. The plaintiffs' complaint also extensively analyzed the hazards of distracted driving.

Apple moved to dismiss the complaint for failure to state a claim,[3] and a magistrate judge issued a report and recommendation that the motion be granted. Following objections, supplemental briefing, and a thorough hearing, the district court issued an opinion granting the motion to dismiss, denying the plaintiffs' motion for leave to amend, and dismissing the complaint with prejudice. This appeal followed.


II

We review the grant of a motion to dismiss under Rule 12(b)(6) de novo, "accepting all well-pleaded facts as true and viewing those facts in the light most favorable to the plaintiffs." *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) (quotation omitted). A complaint survives a motion to dismiss only if it "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Denial of a motion to amend is

---

[3] While the motion was pending, Plaintiffs amended the complaint and the parties stipulated that the motion to dismiss would be deemed to apply to the amended complaint.

reviewed for abuse of discretion. *Stem v. Gomez*, 813 F.3d 205, 209 (5th Cir. 2016). When an amended complaint would still fail to survive a Rule 12(b)(6) motion, it is not an abuse of discretion to deny the motion. *Id.* at 216.

## III

When our jurisdiction is based on diversity, we apply the substantive law of the forum state. *James v. Woods*, 899 F.3d 404, 408 (5th Cir. 2018) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)). When evaluating issues of state law, we look to the decisions of the state's highest court. *In re Franchise Servs. of N. Am., Inc.*, 891 F.3d 198, 209–10 (5th Cir. 2018). If no decision of that court resolves the matter, we make an "*Erie* guess" as to how the court would. *Id.* at 210. We may also look to the state's intermediate appellate courts, unless we have reason to think the state's highest court would decide the issue differently. *Id.*

If guidance from state cases is lacking, "it is not for us to adopt innovative theories of recovery under state law." *Mayo v. Hyatt Corp.*, 898 F.2d 47, 49 (5th Cir. 1990). "Even in the rare case where a course of Texas decisions permits us to extrapolate or predict with assurance where that law would be had it been declared, we should perhaps—being out of the mainstream of Texas jurisprudential development—be more chary of doing so than should an inferior state tribunal." *Rhynes v. Branick Mfg. Corp.*, 629 F.2d 409, 410 (5th Cir. Unit A 1980).

Negligence and products liability claims both require proof of causation. Under Texas law, "[n]egligence requires a showing of proximate cause, while producing cause is the test in strict liability." *Union Pump Co. v. Allbritton*, 898 S.W.2d 773, 775 (Tex. 1995), *abrogated on other grounds by Ford Motor Co. v. Ledesma*, 242 S.W.3d 32 (Tex. 2007). "Proximate cause consists of both cause in fact and foreseeability." *Id.* "Cause in fact means that the defendant's

act or omission was a substantial factor in bringing about the injury which would not otherwise have occurred." *Id.* "Producing cause" has the same meaning as cause in fact, with no showing of foreseeability required. *See Ledesma*, 242 S.W.3d at 46 (defining "producing cause" as "a substantial factor in bringing about an injury, and without which the injury would not have occurred"); *Union Pump*, 898 S.W.2d at 775 ("[F]oreseeability is an element of proximate cause, but not of producing cause.").

Causation for both negligence and products liability therefore turns on whether an alleged cause of an injury may be recognized as a "substantial factor." The Texas Supreme Court has found the following passage from the Restatement instructive:

> The word "substantial" is used to denote the fact that the defendant's conduct has such an effect in producing the harm as to lead reasonable men to regard it as a cause, using that word in the popular sense, in which there always lurks the idea of responsibility, rather than in the so-called "philosophic sense," which includes every one of the great number of events without which any happening would not have occurred. Each of these events is a cause in the so-called "philosophic sense," yet the effect of many of them is so insignificant that no ordinary mind would think of them as causes.

Restatement (Second) of Torts § 431, cmt. a (1965) (quoted in *Lear Siegler, Inc. v. Perez*, 819 S.W.2d 470, 471–72 (Tex. 1991)). With its references to reasonable persons, popular meanings, and ordinary minds, Texas law makes clear that the identification of substantial factors is meant to be "a practical test, [a] test of common experience." *Union Pump*, 898 S.W.2d at 775 (quotations omitted). Ultimately, the Texas Supreme Court has said, this inquiry "mandates weighing of policy considerations." *City of Gladewater v. Pike*, 727 S.W.2d 514, 518 (Tex. 1987).

Appellants focus their briefing on issues of concurrent and superseding causation, arguing that Appellee's device and Kubiak's negligence were

concurrent causes of the accident. But such issues arise when more than one legally recognized cause is present. *See Stanfield v. Neubaum*, 494 S.W.3d 90, 97–98 (Tex. 2016). We must first determine whether Texas law would recognize a smartphone's effect on its user as a cause at all.

No Texas case has addressed whether a smartphone manufacturer should be liable for a user's torts because the neurobiological response induced by the phone is a substantial factor in her tortious acts. To our knowledge, informed by submissions to us, no court in the country has yet held that, and numerous courts have declined to do so.[4] As such, no authority indicates to us that Texas courts, contemplating reasonable persons and ordinary minds, would recognize a person's induced responses to her phone as a substantial factor in her tortious acts and therefore hold the phone's manufacturer responsible.

The Texas cases on which Appellants rely make clear that acceptance of their causation theory would work a substantial innovation in Texas law. These cases present garden-variety theories of causation that ordinary minds would readily accept, so they have little to say about the present case. One is *Dover Corp. v. Perez*, which concerned a heater pumping carbon monoxide into an apartment due to its negligent manufacture and installation. 587 S.W.2d 761, 763–64 (Tex. Civ. App.—Corpus Christi 1979). No useful analogy exists between a smartphone's effect on users and a heater generating carbon monoxide. Others are *Dew v. Crown Derrick Erectors, Inc.*, 208 S.W.3d 448, 449–50 (Tex. 2006), about a worker who fell through an opening in an oil

---

[4] *See Durkee v. C.H. Robinson Worldwide, Inc.*, 765 F. Supp. 2d 742, 749 (W.D.N.C. 2011), *aff'd sub nom.*, *Durkee v. Geologic Sols., Inc.*, 502 F. App'x 326 (4th Cir. 2013); *Coal. Against Distracted Driving v. Apple Inc.*, 2018 WL 2016665, at *1 (Cal. Ct. App. May 1, 2018) (unpub.), *rev. denied* (Aug. 15, 2018); *Estate of Doyle v. Sprint/Nextel Corp.*, 248 P.3d 947, 951–952 (Okla. Civ. App. 2010); *Williams v. Cingular Wireless*, 809 N.E.2d 473, 478–79 (Ind. Ct. App. 2004).

derrick platform left unprotected, and *Rio Grande Regional Hospital, Inc. v. Villareal*, 329 S.W.3d 594, 603–04 (Tex. App.—Corpus Christi 2010), about a nurse who left a psychiatric patient unattended with razor blades. No worthwhile analogies suggest themselves here either. Appellants also cite a case about Ford's decision not to install a seatbelt for the middle seat in the Ford Bronco's rear row. *Ford Motor Co. v. Cammack*, 999 S.W.2d 1, 8–9 (Tex. App.—Houston [14th Dist.] 1998). An analogy may perhaps be drawn between a distracting phone and a car seat without a seatbelt, but it does not get us very far. A user of the former can make it safe for driving by silencing or switching it off; no such simple fix exists for the latter.[5]

To our minds, the closest analogy offered by Texas law is so-called dram shop liability: the liability of commercial purveyors of alcohol for the subsequent torts or injuries of the intoxicated customers they served. *See* Tex. Alco. Bev. Code §§ 2.01–03; *Smith v. Sewell*, 858 S.W.2d 350 (Tex. 1993). Under that law, a person remains liable for her own negligent acts, but the incapacitating qualities of the product, which contribute to the person's negligence, can subject the seller to liability as well.

---

[5] At oral argument, the parties discussed *Flock v. Scripto-Tokai Corp.*, 319 F.3d 231 (5th Cir. 2003), about the defective child-safety features of a lighter. A prior decision of ours offers only so much insight into Texas courts' likely treatment of a novel issue. In any event, the case is distinguishable. Lighters are meant to produce fire, so we have no trouble recognizing them as a cause when blazes occur. The causal potential of smartphones via neurobiological pathways is not so clearly recognized. Moreover, *Flock* was about a small child's use of a device, while the present case is about an adult's. Appellants also brought three cases to our attention through a Rule 28(j) letter shortly before oral argument. None changes our picture of Texas law either. *Critical Path Resources, Inc. v. Cuevas*, 2018 WL 1532343 (Tex. App.—Houston [14th Dist.] Mar. 29, 2018), concerned a flare line at an oil refinery filled with flammable substances that a defendant neglected to clear before repair work was done. *Garcia v. Pruski*, 2018 WL 4096392 (Tex. App.—San Antonio Aug. 29, 2018), addressed the negligence of a person whose bull, left unattended, had strayed onto a public highway. *Choctaw Nation of Oklahoma v. Sewell*, 2018 WL 2410550 (Tex. App.—Dallas May 29, 2018), concerned a passenger distracting a bus driver, leading to an accident. None of the causes alleged in these cases strains the sensibilities of a reasonable person, nor does any resemble the cause advanced by Appellants here.

No. 17-40968

The recognition of dram shop liability in Texas came about in a noteworthy way. The common law did not make an alcohol seller liable for harms caused by intoxicated patrons, but, noting developments in other states, the Texas Supreme Court saw it as its duty "to recognize the evolution" in the law. *El Chico Corp. v. Poole*, 732 S.W.2d 306, 310 (Tex. 1987). It held that "an alcoholic beverage licensee owes a duty to the general public not to serve alcoholic beverages to a person when the licensee knows or should know the patron is intoxicated." *Id.* at 314. Concurrently, the Texas Legislature passed the Dram Shop Act, which created a cause of action with different contours. *See F.F.P. Operating Partners, L.P. v. Duenez*, 237 S.W.3d 680, 683–84 (Tex. 2007) (explaining the history). In the years that followed, a productive exchange between judicial and legislative branches unfolded, gradually resolving various further questions, large and small. *See* H.B. 2868, 79th Leg. Sess. (Tex. 2005); *Reeder v. Daniel*, 61 S.W.3d 359 (Tex. 2001); *Smith v. Merritt*, 940 S.W.2d 602 (Tex. 1997); *Graff v. Beard*, 858 S.W.2d 918, (Tex. 1993); *Smith v. Sewell*, 858 S.W.2d 350 (Tex. 1993). The result was a comprehensive regulatory scheme reflecting the two branches' extensive deliberations and considered judgments.

That is the form of state law development contemplated by *Erie*, under which "the voice adopted by the State as its own (whether it be of its Legislature or of its Supreme Court) should utter the last word" on state law. 304 U.S. at 79 (quotation omitted). To the extent there is a meritorious analogy between smartphone manufacturers and dram shops, it is for the state to explore, not us.[6]

---

[6] It is worth observing that the two paths for law development that led to dram shop liability—state common-law courts and legislatures—may not be equally open in the present case. Those urging new forms of liability under state law may of course go to their legislatures. But where defendants operate nationwide in highly consolidated industries, like Apple in the smartphone industry, the rules governing federal courts in diversity cases may

No. 17-40968

With the state not yet speaking directly to this issue, we note that the debilitating effects of alcohol have been recognized much longer than the effects of smartphones, and the proper regulation of the former has been debated much longer than the latter. Moreover, the law development that has occurred places the onus of distracted driving on the driver alone. *See* Tex. Transp. Code § 545.4251; H.B. 62, 85th Leg. Sess. (Tex. 2017) (making it a criminal offense to read, write, or send a text message while driving).

We therefore cannot say that Texas law would regard a smartphone's effect on a user as a substantial factor in the user's tortious acts. To say otherwise would be an innovation of state law that *Erie* does not permit us to make. Because we decline to consider "neurobiological compulsion" a substantial factor under Texas law, we conclude that the iPhone 5 could not be a cause in fact of the injuries in this case. Consequently, it is unnecessary to consider the issues of concurrent and superseding causation on which Appellants have focused their arguments.

IV

The district court was correct to dismiss Appellants' claims and to deny Appellants' motion for leave to amend. The judgment of the district court is AFFIRMED.

---

substantially close state courts to novel claims. Sued anywhere outside of their home states, the defendants can remove to federal courts. Those courts will then decide the cases under *Erie* precedents that require resort to state case law and likely prohibit acceptance of innovative theories. Provided the defendants diligently exercise their right to remove, cases may never progress through state courts outside of the defendants' home states. Even if cases do progress in the defendants' home states, decisions of those states' courts will have little significance for federal courts in the rest of the country. The result may be a legal system less generative than normal. Certification of questions to the state's highest court is perhaps a way out of this bind. Appellants did not request that here, and their theory of causation is too great an extension beyond existing Texas law for us to consider *sua sponte* certification.