**UNITED STATES COURT OF APPEALS**
**FIFTH CIRCUIT**

————————

No. 02-50002

————————

JUAN RAMIREZ,

Plaintiff-Appellant,

versus

CITY OF SAN ANTONIO; CITY PUBLIC SERVICE BOARD,

Defendants-Appellees.

Appeal from the United States District Court
For the Western District of Texas

November 26, 2002

Before EMILIO M. GARZA and CLEMENT, Circuit Judges, and DAVIS[*], District Judge.

EMILIO M. GARZA, Circuit Judge:

Juan Ramirez appeals the district court's grant of summary judgment in favor of the City of San Antonio and City Public Service (collectively, "CPS"). Ramirez sued CPS, claiming that it violated the Americans with Disabilities Act (ADA) by transferring him to a less physically demanding position within the company. The district court found that his claim was untimely because he did not

_____

[*] District Judge of the Eastern District of Texas, sitting by designation.

file a charge of discrimination with the federal government within 300 days of CPS's alleged discriminatory act. The district court also found that equitable tolling was not warranted in this case. We affirm.

I

Ramirez worked as a shift supervisor at a gas-burning plant operated by CPS. In 1993, he underwent a partial larynectomy to remove a cancerous growth. After his surgery, Ramirez had difficulty readjusting to shift work. He also told CPS that he could not attend meetings held at coal-burning plants. When he failed to attend one such meeting, or provide a doctor's excuse for his absence, CPS placed Ramirez on involuntary leave.

Following that incident, CPS consulted with a specialist in occupational medicine about Ramirez's condition. The doctor concluded that Ramirez was no longer capable of performing as a shift supervisor, and suggested that CPS place him in a sedentary job. On February 7, 1996, CPS met with Ramirez and informed him that he would be transferred on March 11, 1996, to a clerical position. According to CPS, the company informed Ramirez that he would continue to receive the same pay and benefits for the next six months. After that time, however, his shift supervisor salary ($4,214.00 per month) would be reduced to the salary of a clerk ($1,764.00).

On March 6, 1996, Ramirez went to Advocacy, Inc., an organization in Austin, Texas, to discuss his removal from his position as shift supervisor and to obtain information about the ADA. Ramirez later wrote to the government printing office, requesting materials relating to the ADA. The printing office sent him a copy of the statute, the accompanying regulations, and a technical compliance manual.

On March 15, 1996, a few days after his transfer, Ramirez went to the Equal Employment

Opportunity Commission (EEOC). He told the EEOC representative that he felt his transfer was discriminatory. Ramirez explained that he "believed it was in retaliation for . . . using the ADA as a form of accommodation." According to Ramirez, the EEOC informed him that he did not yet have enough to complain about, and suggested that he return when CPS did something more tangible, "like removing [his] title or [his] pay."

On September 11, 1996, Ramirez's salary was reduced. On March 14, 1997, the U.S. Department of Labor received Ramirez's complaint (signed on March 7), asserting that CPS violated the ADA by failing to accommodate him and by retaliating against him for requesting accommodation. The EEOC issued Ramirez a right to sue letter. He subsequently filed this action.

II

Ramirez appeals the district court's grant of CPS's motion for summary judgment. We conduct *de novo* review of the district court's ruling on a motion for summary judgment, applying the same legal standard as the district court. *Wyatt v. Hunt Plywood Co., Inc.*, 297 F.3d 405, 408 (5th Cir. 2002). Summary judgment should be granted only when there is "no genuine issue as to any material fact." FED. R. CIV. P. 56(c); *Wyatt*, 297 F.3d at 408-09. An issue of fact is material only "if its resolution could affect the outcome of the action." *Wyatt*, 297 F.3d at 409.

In determining whether there is a dispute as to any material fact, we consider all of the evidence in the record, but we do not make credibility determinations or weigh the evidence. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). Instead, we "draw all reasonable inferences in favor of the nonmoving party[.]" *Id.*; *Wyatt*, 297 F.3d at 409. If we determine, after giving credence to the facts as presented by the nonmoving party, that "the moving party is entitled to a judgment as a matter of law," we affirm the grant of summary judgment. FED. R. CIV. P. 56(c).

-3-

The district court found that Ramirez's employment discrimination claim was untimely. Under the ADA, a plaintiff must file a charge of discrimination within 300 days of the alleged discriminatory act. 42 U.S.C. § 12117 (incorporating 42 U.S.C. § 2000e-5(e)). We have held that the limitations period on an employment discrimination claim "begins to run from the time the complainant knows or reasonably should have known that the challenged act has occurred." *Vadie v. Mississippi State Univ.*, 218 F.3d 365, 371 (5th Cir. 2000); *Conaway v. Control Data Corp.*, 955 F.2d 358, 362 (5th Cir. 1992) ("'The time begins when facts that would support a cause of action are or should be apparent.'") (quoting *Blumberg v. HCA Mgmt. Co., Inc.*, 848 F.2d 642, 645 (5th Cir. 1988)); *see also Delaware State Coll. v. Ricks*, 449 U.S. 250, 259 (1980) (holding, in a challenge to a denial of tenure, that the limitations period "commenced . . . when the tenure decision was made and [the professor] was notified").

Ramirez argues that CPS discriminated against him by removing him from his position as shift supervisor. Thus, the limitations period in his case began when CPS notified him about the transfer.[1] Ramirez was notified, at the latest, by March 11, 1996 (the day he was transferred). He filed his charge of discrimination no earlier than March 7, 1997 (the day he signed the complaint form). Because he filed his charge over 300 days after he was informed of the alleged discriminatory act, his claim is untimely.

Ramirez argues that he was not on notice of the alleged discrimination until CPS reduced his

---

[1] We note that Ramirez does not allege that CPS discriminated against him by reducing his pay. Therefore, we focus on the moment Ramirez was informed of the transfer. *See Ricks*, 449 U.S. at 257 (stating that the focus for limitations purposes is the discriminatory act alleged in the complaint); *see also Watson v. Eastman Kodak Co.*, 235 F.3d 851, 855 (3d Cir. 2000) (noting that, under *Ricks*, the limitations period begins at the time the employer makes the "specific decision" challenged by the employee). Because Ramirez challenges his transfer, we need not decide whether there is a material dispute of fact as to when Ramirez learned about the reduction in pay.

pay on September 11, 1996. He points out that CPS did not file any paperwork documenting the change until September. As a result, he asserts, he believed the change was only temporary. Ramirez's assertion is belied by the record. As Ramirez himself recounts, he visited Advocacy, Inc. and the EEOC in March 1996 in order to complain about his transfer. At that time, Ramirez told those organizations that CPS transferred him to retaliate against his requests for accommodation. Indeed, Ramirez even requested and received a copy of the ADA and its technical compliance manual. Clearly, he was on notice that his transfer might be discriminatory.[2]

Ramirez goes on to contend that his March 11 transfer, by itself, could not have been the alleged discriminatory act. He argues that a transfer without a decrease in pay or benefits is not an adverse employment action under the law of this Court. Therefore, he reasons, his claim for discrimination could not have accrued until September 11, 1996, when CPS decreased his pay. Ramirez is mistaken. The limitations period does not begin when the employer commits an act that this Court would characterize as an adverse employment decision.[3] Instead, an employee's claim

---

[2] It makes no difference that CPS orally informed Ramirez about his transfer. An employer may put an employee on notice by orally announcing an alleged discriminatory decision. *See Burfield v. Brown, Moore & Flint, Inc.*, 51 F.3d 583, 589 (5th Cir. 1995) (finding that the claim accrued on the date the employee was orally informed of his termination, and that the subsequent letter was "at most a written confirmation" of the prior decision); *see also Everett v. Cobb County Sch. Dist.*, 138 F.3d 1407, 1410 (11th Cir. 1998) (similarly finding that the two-year limitations period began on the date of the oral announcement, and that a subsequent letter "merely confirmed" that earlier decision).

These cases did not involve the time period for filing a charge of discrimination under the ADA (in *Burfield*, we examined whether the claim accrued before the ADA went into effect, 51 F.3d at 588; *Everett* dealt with the two-year limitations period on ADA claims, 138 F.3d at 1409). Nevertheless, we consider both cases persuasive on the issue of "notice." *Cf. Holmes v. Texas A&M Univ.*, 145 F.3d 681, 685 (5th Cir. 1998) ("Although [*Delaware State Coll. v. Ricks*, 449 U.S. 250 (1980)] concerned the statute of limitations for filing a complaint with the EEOC, rather than the [state two-year] limitations period at issue here, we still consider the *Ricks* opinion persuasive[.]").

[3] Were we to accept Ramirez's argument, employers who transferred their employees would effectively toll the limitations period by providing their employees (even for a short period of time)

accrues at the moment the employee believes (or has reason to believe) that he is the victim of discrimination.[4]

III

Ramirez contends that the district court should have exercised its equitable powers to toll the limitations period. First, he claims that CPS should be equitably estopped from asserting a limitations defense, because the company "led [him] to believe" that his transfer would be temporary. Second, Ramirez contends that equitable tolling is appropriate because the EEOC informed him that he would not have a claim until CPS reduced his salary.

The Supreme Court has held that the limitations period on filing a charge of employment discrimination "is subject to equitable doctrines such as tolling or estoppel." *Nat'l RR Passenger Corp. v. Morgan*, 122 S. Ct. 2061, 2072 (2002); *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982). The Court has also made clear, however, that these equitable doctrines "are to be applied sparingly." *Morgan*, 122 S. Ct. at 2072.

We have found that equitable tolling may be appropriate when "the plaintiff is actively misled

_____

with the same wages and benefits. We will not adopt a rule of law that penalizes employers for giving their employees a transition period to adjust to a different lifestyle. *See Burfield*, 51 F.3d at 589 ("This court disfavors any rule that would penalize an employer for giving an employee severance pay or other extended benefits[.]").

[4] Ramirez's argument is also dubious on its own terms. "The ADA prohibits discrimination in the 'terms, conditions, and privileges of employment.'" *Rizzo v. Children's World Learning Ctrs., Inc.*, 84 F.3d 758, 765 (5th Cir. 1996) (quoting 42 U.S.C. § 12112(a)). A transfer to a position with substantially different responsibilities would seem to constitute a change in the "terms" and "conditions" of employment. *See Hunt v. Rapides Healthcare Sys., LLC*, 277 F.3d 757, 770 (5th Cir. 2002) ("A job transfer that . . . can be objectively characterized as a demotion may be an 'adverse employment action' under the ADA's anti-discrimination provision.") (citing *Rizzo v. Children's World Learning Ctrs., Inc.*, 173 F.3d 254, 260 (5th Cir. 1999), *aff'd en banc*, 213 F.3d 209 (5th Cir. 2000)). Ramirez's transfer, therefore, may indeed constitute an adverse employment action under the ADA.

by the defendant about the cause of action or is prevented in some extraordinary way from asserting his rights." *Teemac v. Henderson*, 298 F.3d 452, 457 (5th Cir. 2002) (internal quotation marks omitted). We have also occasionally granted equitable tolling when the delay was caused by "the EEOC's misleading the plaintiff about the nature of her rights." *Blumberg*, 848 F.2d at 644.

The party who invokes equitable tolling bears the burden of demonstrating that it applies in his case. *Teemac*, 298 F.3d at 457; *Conaway*, 955 F.2d at 362 ("If the complaint is not filed within 300 days, the plaintiff has the burden of demonstrating a factual basis to toll the period."); *Blumberg*, 848 F.2d at 644 (same). The district court found that Ramirez did not produce sufficient evidence to demonstrate that he was misled by either CPS or the EEOC. We review the district court's determination on the applicability of equitable estoppel *de novo*. *Tyler v. Union Oil Co. of California*, 304 F.3d 379, 391 (5th Cir. 2002).[5]

Ramirez argues that CPS should be equitably estopped from asserting a limitations defense. He contends that he delayed filing a charge of discrimination because of CPS's promises to find him a position "comparable to the one from which he had been displaced[.]" Ramirez's own evidence, however, makes clear that CPS made no such representation. He admits in his deposition that CPS did not tell him his transfer was temporary, nor did the company guarantee that it would find him comparable employment. Nevertheless, Ramirez contends that equitable tolling is appropriate because

---

[5] We follow the line of cases stating that, in the employment discrimination context, we review the district court's factual determinations for clear error, *Tyler*, 304 F.3d at 391; *Rhodes v. Guiberson Oil Tools Div.*, 927 F.2d 876, 879-80 (5th Cir. 1991), and the court's determination on the applicability of equitable estoppel *de novo*. *Tyler*, 304 F.3d at 391; *Rhodes*, 927 F.2d at 881 ("We review the applicability of equitable estoppel to the facts of this case de novo as a question of law."). Although one recent case suggests that the proper standard is abuse of discretion, *Teemac*, 298 F.3d at 457, we are bound by the earlier precedent. *See H&D Tire and Automotive-Hardware, Inc. v. Pitney Bowes, Inc.*, 227 F.3d 326, 330 (5th Cir. 2000) ("When panel opinions appear to conflict, we are bound to follow the earlier opinion.").

CPS "led [him] to believe" that it would place him in a comparable position.

We do not apply the doctrine of equitable tolling solely based on the employee's subjective impressions. Instead, we examine "'whether the defendant's conduct, innocent or not, *reasonably* induced the plaintiff not to file suit within the limitations period.'" *Tyler*, 304 F.3d at 391 (quoting *McGregor v. La. State Univ. Bd. of Supervisors*, 3 F.3d 850, 866 (5th Cir. 1993)) (emphasis added). A court will equitably toll a limitations period only when the employer's affirmative acts mislead the employee. *See id.* (holding that equitable tolling was proper in a case where the employer had required its employees to sign release forms that later turned out to be invalid). Ramirez has pointed to no affirmative statement made by CPS that his transfer was temporary.[6] Therefore, the district court did not err in refusing to apply equitable estoppel in this case. *See Conaway*, 955 F.2d at 363 ("[The plaintiff] argues that [his employer] assured him that his termination was being reviewed[.] . . . At no point did [the employer] represent that upon review, [the plaintiff] would be rehired. . . . None of [its] actions . . . can be said to have reaso nably induced [the plaintiff] into foregoing his [employment discrimination] claim.").

Ramirez also claims that the district court should have equitably tolled the limitations period because of the actions of the EEOC. In order to prevail on such a claim, Ramirez must show that the EEOC misled him "about the nature of [his] rights." *Blumberg*, 848 F.2d at 644; *see, e.g.*, *McKee v. McDonnell Douglas Technical Serv. Co., Inc.*, 700 F.2d 260, 264-65 (5th Cir. 1983) (holding that a question of fact existed regarding whether the EEOC had refused to accept the plaintiff's

---

[6] At best, Ramirez demonstrates only that CPS promised to *look* for more suitable positions. An employer's promise to review )) and potentially rectify )) an earlier employment decision does not toll the limitations period. *See Ricks*, 449 U.S. at 261 (finding that the pendency of a grievance, or other form of collateral review of an employment decision, does not toll the limitations period). The period still runs from the moment of the alleged discriminatory act.

discrimination claim and remanding so that the district court could consi der the issue). It is not sufficient for Ramirez to show that the EEOC failed to give him some relevant information; he must demonstrate that the EEOC gave him information that was affirmatively wrong. *See Conaway*, 955 F.2d at 363 (holding that "an accurate, but incomplete, oral statement by the EEOC" is not a basis for equitable tolling).

According to Ramirez, he told the EEOC representative that he had been removed from his position as shift supervisor, but that the company had not reduced his pay or benefits. Ramirez states that the EEOC representative informed him that he would not have a claim for discrimination until CPS did something "like removing [his] title or [his] pay." Based on this information, he insists, he believed he did not have a claim until CPS reduced his pay on September 11, 1996.

Although the burden is on Ramirez to "demonstrat[e] a factual basis to toll the [limitations] period," *Conaway*, 955 F.2d at 362, he does not go into any more detail about his conversation with the EEOC representative. Based on the little information Ramirez has provided, we cannot say that the EEOC affirmatively misled him about the nature of his rights. If he indeed told the EEOC *only* that CPS transferred him, then the EEOC correctly told him that he would not have a claim until CPS did something "like removing [his] title or [his] pay." *See, e.g., Hunt*, 277 F.3d at 771 (holding that a transfer that involves solely a change in shift, and not a reduction in compensation or change in responsibilities is not an adverse employment action); *Serna v. City of San Antonio*, 244 F.3d 479, 485 (5th Cir. 2001) (refusing to characterize a transfer without a reduction in pay as an adverse employment action, when the plaintiffs could not show that the transfer was objectively viewed as a demotion). By contrast, if Ramirez explained to the EEOC why a transfer from shift supervisor to clerk would be considered a demotion, the agency's statement would have been incorrect. *See, e.g.,*

*Forsyth v. City of Dallas*, 91 F.3d 769, 774 (5th Cir. 1996) (finding that a transfer without a reduction in pay was an adverse employment action when, because of differences in prestige and working hours, the transfer could be objectively characterized as a demotion); *Click v. Copeland*, 970 F.2d 106, 110 (5th Cir. 1992) (same); *Fyfe v. Curlee*, 902 F.2d 401, 404, 405 (5th Cir. 1990) (finding that an employee's first amendment rights were violated when she was transferred to a "less responsible, more menial job at the same wage"); *see also Hunt*, 277 F.3d at 770 ("A job transfer that . . . involves changes in duties or compensation or can be objectively characterized as a demotion may be an 'adverse employment action' under the ADA's anti-discrimination provision.") (citing *Rizzo v. Children's World Learning Ctrs., Inc.*, 173 F.3d 254, 260 (5th Cir. 1999), *aff'd en banc*, 213 F.3d 209 (5th Cir. 2000)).

Ramirez does not allege that he told the EEOC about any objective differences (in terms of the amount of responsibility or prestige) between the position of shift supervisor and clerk. Nor does he claim to have informed the EEOC that his transfer would be considered a demotion. Given the paucity of evidence presented by Ramirez on this issue, we agree with the district court that Ramirez has not met his burden to demonstrate a factual basis for equitable tolling. He has not produced sufficient evidence to create a genuine issue of fact that the EEOC affirmatively misled him about the nature of his rights, and thereby caused him to file his charge late. *Cf. Woodard v. Western Union Tel. Co.*, 650 F.2d 592, 595 (5th Cir. 1981) ("The only evidence cited by appellant was . . . that Department of Labor officials told him to 'go along with them and remain quiet and they would run the whole thing through.' . . . [T]his is [not] sufficient evidence to create a genuine issue of fact that the Labor Department's actions and represent ations lulled him into failing to file a proper notice,

especially when the record shows that the appellant was familiar with the age discrimination laws.")[7]

We hold, therefore, that the district court properly granted CPS's motion for summary judgment on the ground that Ramirez's claim was untimely filed.

AFFIRMED.

---

[7] Nor does Ramirez allege that he was aware, and told the EEOC on March 15, 1996, that his pay would be reduced after six months. If Ramirez did give that information to the EEOC, then (regardless of whatever else he told the agency) the EEOC may have erred in telling him that he would not have a claim until CPS actually reduced his pay. As we have seen, an employee can bring a claim for discrimination as soon as he knows (or reasonably should know) of the alleged discriminatory act. He does not have to wait (and, indeed, sometimes cannot wait) until after the act actually occurs. There is evidence in the record that Ramirez did mention the reduction in pay to the EEOC. Ramirez, however, does not rely on this evidence in support of his equitable tolling claim. (On the contrary, this evidence is cited by the Appellees in support of their argument that Ramirez was on notice of his employment discrimination claim. *See* Brief of Appellees at 21.) As a result, we do not find that Ramirez is entitled to equitable tolling on this ground.