United States Court of Appeals
Fifth Circuit

**F I L E D**

**November 30, 2006**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

---

06-20407
Summary Calendar

---

HENRY L. HARRISON, JR.,

Plaintiff-Appellant,

Versus

ESTES EXPRESS LINES,

Defendant-Appellee.

---

Appeal from the United States District Court
for the Southern District of Texas, Houston Division

---

Before DAVIS, BARKSDALE and BENAVIDES, Circuit Judges.

PER CURIAM:[*]

Henry L. Harrison ("Harrison") filed this suit against his former employer, Estes Express Lines ("Estes") under Title VII based on racial discrimination.

The district court granted summary judgment in favor of Estes, holding that Harrison had not filed a timely claim with the Equal Employment Opportunity Commission ("EEOC"). For the

---

[*]Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

1

following reasons, we AFFIRM the decision of the district court.

I.

In 2001, Harrison applied for employment with Estes by completing an application form that required certain criminal history disclosures. The application asked applicants to list all felony convictions which had occurred within 7 years of the application date. Harrison had a criminal conviction for cocaine possession which had occurred more than 10 years prior to the date of his application. Because the conviction was beyond the 7 year disclosure period, Harrison did not disclose it. Estes hired Harrison on September 1, 2001.

Harrison's previous conviction was eventually discovered by Estes after the company conducted background checks on its employees in February 2003. Harrison's background check revealed that his 1991 conviction carried a sentence of 12 years. Because Harrison's conviction and prison sentence appeared to conflict with the employment history on his application, Estes requested proof of Harrison's previous employment. Though the documentation provided by Harrison verified most of his previous employment, it also revealed inconsistencies between the actual dates of Harrison's former employment and the dates reported on his application. Specifically, Harrison's application indicated that he was working during a period of time when he was actually

2

incarcerated.

Shortly after Harrison had provided the employment verification documentation to Estes, Estes terminated Harrison effective March 7, 2003. The reason for the termination is the subject of some dispute. Harrison cites evidence in the record that Estes represented to him and to the state unemployment agency that he was fired because of the cocaine conviction. Estes claims that Harrison's previous conviction was not a factor and that Harrison was terminated because of the false statements he made in his application regarding his employment history.

Harrison asserts that while he and another black employee were fired for having criminal convictions, Robert Allen, a white employee with a previous criminal conviction, was permitted to keep his job despite his own criminal background. Harrison's sworn affidavit states that he learned of Allen's conviction back in 2002 when he overheard Allen make statements to co-workers during lunch that he had been in prison.[**]

Three months after Harrison's termination, on or about June 6, 2003, Harrison and his wife went to the EEOC's Houston

---

[**]While Allen was also subject to a criminal background check by Estes, that investigation did not reveal Allen's previous criminal conviction because the conviction had occurred outside the time period examined. After discovery in this case revealed Allen's previous conviction as well as information that Allen had provided false information in his job application, Estes terminated Allen.

District Office.  Harrison met with an EEOC employee, Wanda Johnson, to discuss his termination.  Harrison complained to Johnson that Estes had wrongfully terminated him for failing to disclose his previous felony conviction despite the fact that the employment application did not require such a disclosure.  He claims to have asked Johnson if the EEOC would be able to determine whether race was a factor in his termination through an investigation of the backgrounds and races of other employees who had recently been terminated.  Although Harrison's affidavit indicates that he knew of his white co-worker Allen's conviction and non-termination during his first visit to the EEOC, he did not disclose that information to the Johnson or any other EEOC counselor at that time.

Johnson explained to Harrison that he would have to provide the EEOC with some additional information about other Estes employees before the EEOC could help him file a charge.  Harrison states that the EEOC did not inform him about the 300-day limitations period for the filing of a charge of discrimination.  He agreed to return after he had developed more information.

Harrison also asserts that he filled out a two sided form on green paper during his visit to the EEOC.  This green sheet, which Harrison states was either an intake or charge form, is not part of the record and Harrison's testimony is the only evidence

of the document's existence.

Over the course of the next year, Harrison says he attempted to contact the EEOC office on at least two occasions to get more details on what he needed to do. He claims to have made calls around November of 2003 and February of 2004 and to have left messages with his name and number. After seeking legal advice, Harrison returned to the EEOC office in person on August 23, 2004. At that time, he filed a discrimination claim and completed a charge form. Harrison's August 23, 2004 charge alleges that Estes fired Harrison for having a felony conviction and allowed a white worker with a felony conviction to continue working.

Because Harrison's termination had occurred more than 300 days before he filed his charge (his charge was filed 535 days afterwards), the EEOC determined that Harrison's complaint was not timely and dismissed the charge. Thereafter, Harrison filed the present suit. The district court granted Estes's motion for summary judgment on Harrison's Title VII claims on the basis that Harrison had failed to file a charge with the EEOC within 300-days of the alleged discriminatory violation. Harrison appeals the district court's grant of Estes's motion for summary judgment on the basis that (1) equitable tolling principles can be applied to excuse his noncompliance with the 300 day filing period; or

(2) alternatively, he met the 300 day filing requirement during his initial meeting with the EEOC and should be allowed to amend and correct any defects in that complaint.

## II.

## A.

In reviewing the granting of a motion for summary judgment, an appellate court reviews the district court's decision de novo, applying the same standard as the district court. Price v. Fed. Express Corp., 283 F.3d 715, 719 (5th Cir. 2002). Viewing evidence in the light most favorable to the nonmovant, summary judgment is proper only when no genuine issue of material fact exists. Rubinstein v. Adm'rs of the Tulane Educ. Fund, 218 F.3d 392, 399 (5th Cir. 2000). We review the district court's determination on the applicability of equitable estoppel de novo. Ramirez v. City of San Antonio, 312 F.3d 178, 183 (5th Cir. 2002).

Under Title VII, a plaintiff must file a charge of discrimination within 300 days of the alleged discriminatory act. 42 U.S.C. § 2000e-5(e)(1); Huckabay v. Moore, 142 F.3d 233, 238 (5th Cir. 1998). The 300-day filing period is subject to equitable doctrines such as tolling or estoppel. However, the Supreme Court has held that such doctrines must be applied sparingly. Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101,

6

113-14 (2002).

This court has recognized three possible and non-exclusive bases for tolling the time period for filing a charge: (1) the pendency of a suit between the same parties in the wrong forum; (2) plaintiff's unawareness of the facts giving rise to the claim because of the defendant's intentional concealment of them; and (3) the EEOC's misleading the plaintiff about the nature of her rights. Wilson v. Sec'y, Dep't of Veterans Affairs, 65 F.3d 402, 404 (5th Cir. 1995). Harrison argues that equitable tolling is appropriate in this case based on the latter two grounds. The party who invokes equitable tolling bears the burden of demonstrating that it applies in his case. Conaway v. Control Data Corp., 955 F.2d 358, 362 (5th Cir. 1992).

Harrison first argues that Estes misled him about the reason for his termination and failed to disclose the identities of similarly situated white employees who were not discharged.

Harrison's assertions that he did not discover the facts sufficient to support his claim and that Estes prevented him from learning such facts is not supported by the summary judgment evidence. Harrison stated in his affidavit that he learned that Robert Allen had a criminal background in 2002 when he heard Allen talk about his prison time in the break room at work. Further, the same affidavit indicates that Harrison's visit to

the EEOC office in June 2003 was prompted by his belief that two black employees were discharged for previous convictions but that no white employees were discharged despite the fact that at least one white employee also had a criminal background. Thus, Harrison by his own admission had formed a belief regarding discrimination upon his first visit to the EEOC. Because Harrison had learned sufficient facts to support filing his discrimination claim upon his first visit to the EEOC, the 300-day filing period began on or about June 9, 2003, at the latest. See Blumberg v. HCA Management Co., 848 F.2d 642, 645 (5th Cir. 1988) ("The time begins when facts that would support a cause of action are or should be apparent."). As a result, Harrison's claim is untimely since it was filed on August 23, 2004, at least 350 days after Harrison learned of those relevant facts.

Further, although Harrison alleges that Estes concealed its discriminatory intent by lying about the reason for his dismissal, any dispute between Harrison and Estes regarding the motivation for his termination cannot be said to have concealed the facts relevant to his claim. See Conaway, 955 F.2d at 363 (where an ADEA claimant knew that three younger sales persons had been hired despite purported cut-backs in his department which were used to justify his own termination, claimant knew enough facts to support filing a claim).

8

Harrison next argues that the EEOC failed to alert him to the relevant time limitation or adequately assist him with the filing of his claim during his initial visit. Because of these failures, Harrison argues, equitable tolling is appropriate.

The EEOC did not affirmatively mislead Harrison by failing to advise him of the applicable limitations period. See Conaway, 955 F.2d at 363 (EEOC did not affirmatively mislead ADEA plaintiff by failing to inform him of 300-day limitations period). Further, Harrison does not allege that the EEOC counselor he encountered during his first visit misled him or even actively discouraged him from filing a claim. Nor does he allege that the counselor erred in her explanation of either the laws enforced by the EEOC or the requirements for filing a charge of discrimination. The record summary judgment evidence belies Harrison's argument that the EEOC misled him about the nature of his rights. Accordingly, he may not receive equitable tolling of the limitations period on that basis. Ramirez, 312 F.3d at 184 ("In order to invoke equitable tolling ... [a plaintiff] must demonstrate that the EEOC gave him information that was affirmatively wrong.").

### B.

Finally, Harrison argues that even if equitable tolling is not appropriate in this case, he gave the EEOC sufficient

information during his first visit to initiate a charge by filling out a two-sided green sheet of paper, which he asserts was an intake or charge form. He asserts that his second visit to the EEOC and the resulting paperwork should be treated as amendments to this original charge which could serve to cure any deficiencies.

EEOC regulations recognize that a charge may be amended to cure technical defects or omissions and that such amendments will relate back to the date the charge was first received. C.F.R. § 1601.12(b)(1991). However, Harrison's post-deposition statements that he filled out a green sheet during his first visit to the EEOC was not enough evidence to raise an issue of material fact with regard to whether he filed a curable charge. The EEOC confirmed that its Houston office has no record of either a charge or green sheet filed by Harrison against Estes. Further, Harrison's deposition testimony about what transpired during his June 2003 visit does not support an inference that he filled out a charge form at that time. Specifically, Harrison testified that he did not emerge from his meeting with the EEOC counselor with any paperwork, he did not sign any documents requiring an oath, and he did not believe that the EEOC was conducting an investigation into his termination after the meeting. Based on this evidence, the district court correctly concluded that

Harrison did not file any type of charge during his initial visit to the EEOC.

III.

For the foregoing reasons, the judgment of the district court is AFFIRMED.

11