# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

January 13, 2017

Lyle W. Cayce
Clerk

————

No. 15-30576

————

COURTNEY SANDOZ; GREGORY L. PRATT; KRISTA STEGALL; ANDRE SAVOIE; EBONY MARTIN PLUMBAR,

　　　　Plaintiffs–Appellants,

v.

CINGULAR WIRELESS, L.L.C., doing business as AT&T Mobility, L.L.C.; CINGULAR WIRELESS EMPLOYEE SERVICES, L.L.C.; AT&T MOBILITY, L.L.C.,

　　　　Defendants–Appellees.

————————————

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 6:07-CV-1308

————————————

Before STEWART, Chief Judge, and OWEN and COSTA, Circuit Judges.

PER CURIAM:[*]

Courtney Sandoz and several other former employees (Opt-In Plaintiffs) of Cingular Wireless, L.L.C. (Cingular) appeal the district court's decertification of their Fair Labor Standards Act (FLSA) collective action as

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 15-30576

well as the dismissal of Sandoz's individual claim. The district court did not abuse its discretion by determining that Sandoz was not similarly situated to the Opt-In Plaintiffs, and we affirm the district court's order decertifying the class. The Supreme Court's recent decision in *Campbell–Ewald Co. v. Gomez*,[1] however, requires that we reverse the district court's order dismissing Sandoz's individual claim.

**I**

Sandoz, a former part-time employee of Cingular, initiated this collective action suit against Cingular in state court pursuant to 29 U.S.C. § 216(b) for alleged violations of the FLSA.[2] During Sandoz's employment, Cingular authorized its part-time employees to work nineteen hours per week as "regular hours" but also allowed them to work additional hours, which it classified as "exception time." To account for hours, Cingular required the part-time employees to submit a time card, which the store manager would verify, before a specified date. If the employee failed to submit his or her time card, or the store manager failed to verify the time card, before the specified date, Cingular, Sandoz avers, would pay the employee for regular hours only, adding exception time to a subsequent paycheck. Sandoz claims that this payment scheme resulted in a weekly salary below the minimum wage, in violation of the FLSA, in weeks when she worked more than thirty-four hours.[3]

Cingular removed the case to federal court and promptly served Sandoz with a Rule 68 offer of judgment in full satisfaction of Sandoz's demand plus reasonable attorney's fees.[4] After Sandoz rejected Cingular's Rule 68 offer, Cingular, asserting that the offer of judgment mooted Sandoz's claim, moved

---

[1] 136 S. Ct. 663 (2016).
[2] 29 U.S.C. §216.
[3] 29 U.S.C. § 206(a).
[4] FED. R. CIV. P. 68(a), (b).

to dismiss for lack of subject-matter jurisdiction. The district court denied the motion but certified the question concerning the effect of the offer of judgment for interlocutory review.

This court permitted the appeal and held that "when a FLSA plaintiff files a timely motion for certification of a collective action, that motion relates back to the date the plaintiff filed the initial complaint."[5] If Sandoz filed a warranted motion for certification "without undue delay," we concluded, an offer that would satisfy only Sandoz's demand would not moot the case,[6] but if Sandoz's motion to certify was either untimely or unwarranted, "then Sandoz . . . represents only herself, and Cingular's Rule 68 offer of judgment rendered the case moot."[7] In light of this determination, we remanded the case for a decision on "the timeliness and, if necessary, the merits of Sandoz's motion to certify."[8]

On remand, the district court, after concluding that Sandoz had timely filed the certification motion, provisionally certified the collective action. Once the parties agreed on the content of the notice to provide to prospective collective action members, four former Cingular employees opted in. However, unless an equitable defense applied, the maximum three-year statute of limitations barred each Opt-In Plaintiff's claim.[9]

The district court subsequently issued two orders from which Sandoz and the Opt-In Plaintiffs now appeal. In the first, the court granted Cingular's motion to decertify the conditional collective action on the basis that the Opt-In Plaintiffs' claims could not benefit from equitable tolling or equitable

---

[5] *Sandoz v. Cingular Wireless LLC*, 553 F.3d 913, 920-21 (5th Cir. 2008).

[6] *Id.* at 921.

[7] *Id.*

[8] *Id.* at 922.

[9] *See* 29 U.S.C. §256(b); *Atkins v. General Motors Corp.*, 701 F.2d 1124, 1130 n.5 (5th Cir. 1983).

No. 15-30576

estoppel and, thus, were time-barred. As a result, the court concluded that they were not "similarly situated" to Sandoz (whose claim was not time-barred), decertified the collective action, and dismissed the Opt-In Plaintiffs' claims. In the second order, the district court held that, with the collective action decertified, Sandoz represented "only herself," rendering the case moot, and dismissed Sandoz's claim. Sandoz and the Opt-In Plaintiffs timely appealed both orders.

## II

We review a district court's decertification of a collective action for abuse of discretion.[10] "A district court abuses its discretion if it bases its decision on an erroneous view of the law or on a clearly erroneous assessment of the evidence."[11] Although there is considerable uncertainty over the appropriate standard of review of equitable tolling and equitable estoppel claims,[12] we do not resolve because, even reviewing de novo, Sandoz has not established that either equitable tolling or estoppel is appropriate.[13]

---

[10] *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1213 (5th Cir. 1995), *abrogated on other grounds by Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003). Although *Mooney* is an Age Discrimination in Employment Act (ADEA) case, Congress has directed that courts must enforce it "in accordance with the powers, remedies, and procedures provided in [29 U.S.C. § 216] (except for subsection (a) thereof)." 29 U.S.C. § 626(b).

[11] *Hesling v. CSX Transp., Inc.* 396 F.3d 632, 638 (5th Cir. 2005) (internal quotation marks omitted) (quoting *Kennedy v. Texas Utils.*, 179 F.3d 258, 265 (5th Cir. 1999)).

[12] *Compare Ramirez v. City of San Antonio*, 312 F.3d 178, 183-86 (5th Cir. 2002) (reviewing district court's equitable tolling decision de novo), *and Rhodes v. Guiberson Oil Tools Div.*, 927 F.2d 876, 881 (5th Cir. 1991) ("We review the applicability of equitable estoppel . . . de novo as a question of law), *with Bridas S.A.P.I.C. v. Turkmenistan*, 345 F.3d 347, 360 (5th Cir. 2003) ("The use of equitable estoppel is within a district court's discretion. We, therefore, review the district court's decision to apply equitable estoppel only to ensure that the court did not abuse its discretion.") (citations omitted)); *Fisher v. Johnson*, 174 F.3d 710, 712-13 (5th Cir. 1999) (noting that when the district court declined to invoke equitable tolling, "we review . . . only for abuse of discretion").

[13] *Cf. United States v. Wheaten*, 826 F.3d 843, 851 (5th Cir. 2016) (refraining from resolving whether the applicable standard was de novo or abuse of discretion because "even reviewing de novo," the district court was correct).

4

No. 15-30576

The FLSA allows, in pertinent part, an employee who alleges that his or her employer violated the FLSA's minimum wage requirement to initiate a suit "for and [on] behalf of himself . . . and other employees similarly situated."[14] Sandoz's primary argument is that the district court erred by refusing to apply either equitable tolling or equitable estoppel and decertifying the collective action because the application of either form of equitable relief would eliminate Cingular's statute of limitations defense and result in Sandoz and the Opt-In Plaintiffs being similarly situated. We conclude that Sandoz has not shown entitlement to equitable tolling or equitable estoppel and, accordingly, that the district court did not abuse its discretion in decertifying the class.

## A

Equitable tolling "is a narrow exception . . . that should be 'applied sparingly.'"[15] For this narrow exception to apply, a plaintiff must show "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing."[16] This standard requires "reasonable diligence," not "maximum feasible diligence,"[17] and an extraordinary circumstance that derives from some "external obstacle to timely filing . . . beyond [the plaintiff's] control," not from self-inflicted delay.[18]

---

[14] 29 U.S.C. § 216(b).

[15] *Phillips v. Leggett & Platt, Inc.*, 658 F.3d 452, 457 (5th Cir. 2011) (quoting *Ramirez*, 312 F.3d at 183).

[16] *Menominee Indian Tribe of Wis. v. United States*, 136 S. Ct. 750, 755 (2016) (internal quotation marks omitted) (quoting *Holland v. Florida*, 560 U.S. 631, 649 (2010)); *see also Lugo-Resendez v. Lynch*, 831 F.3d 337, 334 n.41 (5th 2016) (describing the *Menominee* standard as the "general standard for equitable tolling").

[17] *Holland*, 560 U.S. at 653 (internal quotation marks omitted) (quoting *Starns v. Andrews*, 524 F.3d 612, 618 (5th Cir. 2008)).

[18] *Menominee*, 136 S. Ct. at 756 (quotations and alterations omitted).

No. 15-30576

Sandoz contends that she did not need to prove that the Opt-In Plaintiffs engaged in *any* diligence "in the absence of notice of an [FLSA] offense sufficient to trigger a duty to inquire within the limitations period." She does so because, as the court below concluded, "there is no detail . . . offered in the record to establish the requisite individual due diligence." In lieu of evidence on due diligence, Sandoz maintains that Cingular did not provide its employees with information sufficient to discover that their hourly rate for certain weeks was below the minimum wage and, thus, no diligence was necessary. Perhaps a case could exist in which no diligence suffices as reasonable diligence, but we do not have that case here.

The timesheets and paycheck memos that were available to all Cingular employees provided the information necessary for the Opt-In Plaintiffs to discover that their effective hourly wage fell below the minimum wage required by the FLSA. The timesheets clearly contain the total hours worked in a given week, and the paycheck memos state the current earned pay for two weeks and the amount of hours to which that pay correlates, which was always thirty-eight hours if the Opt-In Plaintiffs worked more than nineteen hours each week. Although Cingular listed the total earned pay and the hours to which that pay correlated in the bi-weekly aggregate on the paycheck memos, the Opt-In Plaintiffs could easily deduce (either from the line on the timesheet stating that nineteen hours were the "standard hours paid" or the fact that the times sheets had as "Overtime at Regular Rate" and "Overtime Pay 1.5x" the difference between the total hours worked and the nineteen standard hours paid) that the thirty-eight aggregate hours listed was simply the combination of two nineteen-hour, or "regular hour," weeks. Thus, the Opt-In Plaintiffs could discover their weekly pay by dividing the bi-weekly aggregate pay by two. After completing this step, the Opt-In Plaintiffs could determine whether a week of pay fell below the minimum wage by simply dividing their weekly pay

by the total hours worked in a week and comparing that number to the minimum wage, which was $5.15 at the time.  Even if the Opt-In Plaintiffs had not performed this basic arithmetic or had not inferred that the thirty-eight current hours listed on the paycheck memos were merely the combination of two regular-hour work weeks, the magnitude of the difference alleged between the stated hourly wage—$9.30—and the claimed actual hourly wage—less than $5.15—is more than enough to warrant *some* level of diligence.  The Opt-In Plaintiffs failure to conduct either of these minimal levels of diligence voids Sandoz's equitable tolling claim.

Sandoz's assertion that Cingular's litigation strategy was an extraordinary circumstance that prevented timely filing is equally unavailing.  Sandoz maintains that Cingular's "protracted litigation over an ineffectual offer of judgment . . . and opposition to certification and notice until after the limitations period expired" was an external obstacle that "effectively delayed notice of the [FLSA] violations and of the right [to] join this action to potential claimants," preventing timely filing.  Equitable tolling, however, focuses on whether an external obstacle "prevented timely filing," not on whether an external obstacle prevented timely filing *in a specific suit*.[19]  Nothing prevented the Opt-In Plaintiffs from discovering their claims and initiating a suit.  We do not hold that protracted litigation can never constitute an extraordinary circumstance, but when, as here, an employee's own inaction relegates opt-in notice from a specific suit as the only means of discovering an FLSA violation, we will not transform routine litigation into an extraordinary circumstance.

---

[19] *Menominee*, 136 S. Ct. at 755.

No. 15-30576

## B

Equitable estoppel prevents a defendant "from asserting a limitations defense when its conduct induced or tricked a plaintiff into allowing a filing deadline to pass."[20] Although "a hallmark of [equitable estoppel] is its flexible application," it typically applies only when a defendant "makes a definite misrepresentation of fact to another person having reason to believe that the other will rely upon it," and the person does, in fact, reasonably rely.[21] Thus, "[a] defendant is equitably estopped from asserting that a claim is time-barred where its conduct induced a plaintiff to refrain from exercising its rights."[22] In the employment context, this may result from "the employer's deliberate design to delay the filing *or* actions that the employer should unmistakably have understood would result in the employee's delay."[23] The party requesting equitable estoppel bears the burden of establishing that the application of estoppel to the case is warranted.[24]

In support of her equitable estoppel argument, Sandoz essentially reiterates her tolling argument, asserting that Cingular took steps to conceal its alleged minimum wage violations by violating Department of Labor disclosure requirements, understating hours worked and total earnings in the paycheck memos, leaving the effective hourly rate unaltered despite paying for some hours in subsequent paychecks, and providing payable hours in two-week increments. This conduct, Sandoz maintains, had the invidious effect of

---

[20] *McAllister v. F.D.I.C.*, 87 F.3d 762, 767 (5th Cir. 1996).

[21] *Heckler v. Cmty. Health Servs. of Crawford Cty., Inc.*, 467 U.S. 51, 59 (1984).

[22] *Conaway v. Control Data Corp.*, 955 F.2d 358, 362 (5th Cir. 1992) (quoting *Amburgey v. Cohart Refractories Corp.*, 936 F.2d 805, 810 n.14 (5th Cir. 1991).

[23] *Tyler v. Union Oil Co. of Cal.*, 304 F.3d 379, 391 (5th Cir. 2002) (internal quotation marks omitted) (quoting *Clark v. Resistoflex Co.*, 854 F.2d 762, 769 (5th Cir. 1988)).

[24] *Rhodes v. Guiberson Oil Tools Div.*, 927 F.2d 876, 879 (5th Cir. 1991) (citing *Blumberg v. HCA Mgmt., Co.*, 848 F.2d 642, 644 (5th Cir. 1988), *cert denied* 488 U.S. 1007 (1989)).

8

inducing the Opt-In Plaintiffs to refrain from initiating suit within the statute of limitations period. As with the equitable tolling claim, Sandoz's equitable estoppel claim lacks merit. Before the statute of limitations expired, the Opt-In Plaintiffs had obtained sufficient information—the same information that Sandoz had before initiating suit—to discover that their effective hourly wage fell below the minimum wage. Cingular's provision of this information is plainly at odds with Sandoz's conclusion that Cingular induced or tricked the Opt-In Plaintiffs from timely filing. The Opt-In Plaintiffs have not carried their burden of establishing entitlement to equitable estoppel.

## C

Sandoz devotes one sentence of her brief to argue that "in this Circuit a time limitations defense is not an appropriate reason to deny . . . certification." "[G]enerally we do not pay attention to unargued assertions,"[25] and therefore, we do not consider this issue.

## III

The Supreme Court's recent decision in *Campbell–Ewald Co. v. Gomez*[26] has made our review of the dismissal of Sandoz's claim for lack of subject-matter jurisdiction straightforward. In *Campbell–Ewald*, the Court relied on "basic principles of contract law" to conclude that a "Rule 68 offer of judgment, once rejected, ha[s] no continuing efficacy" and "does not moot a plaintiff's case."[27] As a result, the fact that Sandoz represented only herself after the district court decertified the collective action is irrelevant, for Cingular's rejected offer lacked force to moot the claim. We therefore reverse the district court's order dismissing Sandoz's claim.

---

[25] *Walker v. Epps*, 550 F.3d 407, 417 (5th Cir. 2008); *see also N.W. Enters. Inc. v. City of Houston*, 352 F.3d 162, 183 n.24 (5th Cir. 2003) (noting that a "failure to provide legal or factual analysis results in waiver").

[26] 136 S. Ct. 663 (2016).

[27] *Id.* at 670, 672.

No. 15-30576

\*       \*       \*

For the foregoing reasons, we AFFIRM the district court's decertification of the collective action and REVERSE its order dismissing Sandoz's claim.